UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------X
                                                      :
ROMAN ROZENFELD,                                      :
                                                      :
                                Plaintiff,            :
                                                      :
                   v.                                 :
                                                      :
MTA BUS COMPANY,                                      :
                                                      :
                                Defendant.            :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 16, 2015

13 Civ. 4847 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

On July 11, 2013, Plaintiff Roman Rozenfeld filed this action alleging violations of the Fifth and Fourteenth Amendments to the U.S. Constitution, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301 (the "NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 to 8-131 (the "NYCHRL"). Plaintiff contends that he was suspended from work without due process, and that he was subject to employment discrimination and retaliation based on his national origin (Russian). Defendant MTA Bus Company ("MTA Bus")[1] has moved for summary judgment

---

[1]    MTA Bus is a public benefit corporation and a subsidiary of the Metropolitan Transportation Authority (the "MTA"). *See Williams* v. *MTA Bus Co.*, 989 N.Y.S.2d 806, 818-19 (N.Y. Sup. Ct. 2014); N.Y. Pub. Auth. Law §§ 1263(1)(a) (McKinney 2010), 1266 (McKinney 2013); *see also MTA Bus Non-Union Employees Rank & File Comm. ex rel. Simone* v. *Metro. Transp. Auth.*, 899 F. Supp. 2d 256, 258, 267 (S.D.N.Y. 2012), *aff'd*, 547 F. App'x 12 (2d Cir. 2013) (summary order); *Clark* v. *Metro. Transp. Auth.*, 999 N.Y.S.2d 309, 315-16 (N.Y. Sup. Ct. 2013).

on all of Plaintiff's claims.  For the reasons set forth in this Opinion,

Defendant's motion is granted in its entirety.

## BACKGROUND[2]

### A.    Factual Background

Plaintiff, an individual of Russian national origin, was hired by

Command Bus Company in 2003 as a "fueler" at the Spring Creek Bus Depot

in Brooklyn.  (Def. 56.1 ¶ 1; Rozenfeld Dep. 11-12).  Sometime after 2006,

---

[2]    The facts set forth herein are drawn primarily from Defendant's Local Rule 56.1 Statement ("Def. 56.1").  Citations to Defendant's Local Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.

While Plaintiff submitted what he titled a "Local Rule 56.1 Statement of Material Facts in Dispute," this document is wholly non-compliant with Local Civil Rule 56.1.  First, it does not include "correspondingly numbered paragraph[s] responding to each numbered paragraph" in Defendant's Local Rule 56.1 Statement.  Local Rule 56.1(b).  This absence is more than an annoyance: Because Plaintiff does not specifically controvert any fact set forth in Defendant's Local Rule 56.1 Statement, every paragraph in Defendant's Statement is deemed to be admitted for the purposes of this motion.  *See* Local Rule 56.1(c); *see also Suares* v. *Cityscape Tours, Inc.,* — F. App'x —, No. 14-1561-cv, 2015 WL 921754, at *1 (2d Cir. Mar. 5, 2015) (summary order) (affirming as within its discretion district court's acceptance of all facts in defendant's Local Rule 56.1 statement as admitted where plaintiff failed to comply with the rule).  And while Plaintiff's Statement does include two numbered paragraphs purporting to contain "material issues of fact" that "prevent the entry of summary judgment," neither of those statements is "followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  Local Rule 56.1(d).  In the prelude to the two paragraphs, Plaintiff purports to incorporate by reference his five-page declaration and 11 annexed exhibits, but such a generic recitation does not bring his Statement into compliance with the federal or local rules.  In any event, the two numbered paragraphs concern information immaterial to the resolution of the pending motion.  Plaintiff's opposition brief does include a "Statement of Facts"; however, that section is similarly bereft of evidentiary citations, and where there are citations, the factual content is largely consistent with Defendant's Local Rule 56.1 Statement.

The Court is not required to consider what the parties fail to include in their Local Rule 56.1 Statements.  *Holtz* v. *Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001); *see also Amnesty Am.* v. *Town of West Hartford,* 288 F.3d 467, 470 (2d Cir. 2002) (holding that Federal Rule of Civil Procedure 56 does not require the Court "to perform an independent review of the record to find proof of a factual dispute" (citations omitted)).  That said, the Court makes citation to other portions of the record at its discretion.  *See Holtz,* 258 F.3d at 73.  Accordingly, for convenience, the parties' declarations in support of their submissions are referred to as "[Name] Decl."; deposition testimony is referred to as "[Name] Dep."; Defendant's opening brief is referred to as "Def. Br."; Plaintiff's opposition brief is referred to as "Pl. Opp."; and Defendant's reply brief is referred to as "Def. Reply."

when MTA Bus took over the operations of Command Bus Company and several other private lines, Plaintiff was promoted to "mechanic." (Def. 56.1 ¶ 2; Pl. Opp. 2). While Plaintiff did take an examination for the promotion, that examination was not a civil service examination because, as Plaintiff understood it, he was not a civil servant. (Rozenfeld Dep. 7). In late 2009, in response to a job vacancy notice, Plaintiff applied for a promotion to the position of "bus maintenance supervisor," also called a "line supervisor." (Def. 56.1 ¶ 3). No civil service examination was administered for the purposes of this promotion, either. (*Id.* at ¶ 4). After an interview, Plaintiff received the promotion to line supervisor in 2010. (*Id.* at ¶ 5).

The line supervisor position is a non-managerial position whose members are represented by the Transport Workers Union/Transit Supervisors Organization Local 106 ("Local 106"). (Def. 56.1 ¶ 5). At the times relevant to this action, Local 106 did not have a collective bargaining agreement with MTA Bus. (*Id.* at ¶ 6). In the absence of an applicable provision in a collective bargaining agreement specifying a particular disciplinary procedure, MTA Bus employees, including members of Local 106, were afforded a two-step hearing process. (*Id.* at ¶ 7). During the process, the employee was entitled to a union or other representative and given an opportunity to contest the disciplinary charge. (*Id.*). If at the first hearing (the "Step I" hearing), the hearing officer upheld the charge, the employee was entitled to appeal the disposition in a second hearing (a "Step II" hearing). (*See id.* at ¶ 21).

3

Plaintiff encountered this disciplinary process at least twice. The first time was in September 2012, when Plaintiff was charged with insubordination and conduct unbecoming a supervisor. (Def. 56.1 ¶ 8). At his Step I hearing, Plaintiff accepted a two-week suspension for the infraction. (*Id.*). A few weeks later, Plaintiff was again subject to discipline after an incident on November 8, 2012, when Plaintiff and Robert Hiltz, a fellow line supervisor, engaged in a verbal altercation over the allocation of overtime. (*Id.* at ¶ 9). Each employee was directed by a superintendent to submit a written statement describing what, in his view, had occurred. (*Id.*). Plaintiff asserted in his statement that Hiltz had called him a "Russian piece of shit." (*Id.* at ¶ 10). Hiltz asserted in his statement that Plaintiff had called him a "lying motherfucker" and a "racist cocksucker." (*Id.* at ¶ 11).

Robert Picarelli, MTA Bus's Chief Officer for Internal Studies & Operations Improvement, conducted an investigation into the incident. (Def. 56.1 ¶ 12). Picarelli separately interviewed both Plaintiff and Hiltz, each of whom was accompanied by his own union representative during the interview. (*Id.* at ¶ 13; Efron Decl. Ex. H). Both employees denied using any derogatory epithets during their argument. (Def. 56.1 ¶ 13). Picarelli discounted their denials, concluded that "Hiltz and Rozenfeld made highly inappropriate comments which violated the Respectful Workplace Policy," and recommended that "appropriate action" be taken against both employees. (*Id.* at ¶ 14).[3]

---

[3]    MTA Bus's Respectful Workplace Policy prohibits, among other things, "[u]sing degrading words to describe an individual or group," or "[c]ursing, yelling, using

Hiltz's disciplinary action report charged him with having "acted in a foul, profane, and abusive manner" and with having "made ethnic comments to a MTA Bus Company employee." (Def. 56.1 ¶ 16). Hiltz had no prior disciplinary infractions. (*Id.* at ¶ 19). At his Step I hearing, Hiltz accepted a ten-day suspension, coupled with other conditions. (*Id.* at ¶ 18). Plaintiff's disciplinary action report charged him with having "acted in a foul, profane, and abusive manner" and with having "made sexually disparaging comments to a MTA Bus Company employee." (*Id.* at ¶ 17). Plaintiff received a copy of both the Picarelli report and his disciplinary action report. (*Id.* at ¶ 20). At his Step I hearing on November 21, 2012, Plaintiff was accompanied by a union representative, and protested his innocence of the charge. (*Id.*). The Step I hearing officer upheld the charge, imposed a penalty of dismissal, and removed Plaintiff from service; Plaintiff appealed that disposition to Step II. (*Id.* at ¶ 21).

A Step II hearing was held on November 26, 2012, before Carl Macchio, MTA Bus's Director of Labor Relations. (Def. 56.1 ¶ 22). At this appeal, Plaintiff was also accompanied by a union representative, and again he maintained that he had not used profanity in his argument with Hiltz. (*Id.* at ¶ 22; Rozenfeld Dep. 62). At the conclusion of the hearing, Macchio offered Plaintiff, in resolution of the charge, a further five-day suspension plus an additional fifteen days served at 70% pay. (Def. 56.1 ¶ 23). Plaintiff rejected the offer. (*Id.*). Several days later, Plaintiff rejected a second offer that would

---

profanity or language directed at an individual which is meant to demean or embarrass." (Def. 56.1 ¶ 15).

have reduced the penalty of dismissal to a multi-day suspension.  (*Id.* at ¶ 24).

Macchio rendered a written decision on the Step II hearing on December 7,

2012, sustaining the charge and imposing a 25-day suspension.  (*Id.* at ¶ 25).

In considering the appropriate penalty to impose, Macchio viewed Plaintiff's

conduct "in conjunction with the recent two-week suspension [he had] served

for a conduct unbecoming violation."  (*Id.* at ¶ 26).

## B.    Procedural Background

Plaintiff filed this action on July 11, 2013 (Dkt. #1), and filed an

amended complaint on September 20, 2013 (Dkt. #3).  Plaintiff's Amended

Complaint contains four counts, alleging violations of (i) his right to due

process under the Fifth and Fourteenth Amendments, (ii) the Civil Rights Act of

1964, (iii) the NYSHRL, and (iv) the NYCHRL.  (Am. Compl. ¶¶ 15-18).  Because

the Amended Complaint "invoke[s]" this Court's jurisdiction under, *inter alia*,

42 U.S.C. § 1983 (*id.* at ¶ 2), the Court understands Plaintiff to bring his

constitutional claims pursuant to that statute.  Likewise, because both parties

address Plaintiff's claims brought under "the Civil Rights Act of 1964" as if they

were brought pursuant to Title VII of that Act, the Court accordingly

understands Plaintiff's federal discrimination claims to be brought under Title

VII.[4]  Following discovery, Defendant filed a motion for summary judgment on

---

[4]      In extending to Plaintiff the courtesy of discerning legal bases for claims where he has
specified none, the Court commends to him the observation of the Court of Appeals for
the Seventh Circuit that "Judges are not like pigs, hunting for truffles buried in briefs."
*United States* v. *Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam); *cf. Jackson* v.
*Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014) (noting that the concerns in ensuring
that *pro se* litigants understand the stakes in summary judgment motions and the
solicitude therefore given to them are "simply irrelevant" where a plaintiff is counseled).

all of Plaintiff's claims on July 7, 2014 (Dkt. # 23); the motion was fully briefed

on October 9, 2014 (Dkt. #23-26, 31-32, 34-35, 37).

## DISCUSSION

### A.    The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be

granted only if all the submissions taken together "show that there is no

genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322

(1986) (internal citation and quotation marks omitted); *see also Anderson* v.

*Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the

initial burden of demonstrating "the absence of a genuine issue of material

fact." *Celotex*, 477 U.S. at 323.  A fact is "material" if it "might affect the

outcome of the suit under the governing law," and is genuinely in dispute "if

the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys* v. *City of New*

*York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may

discharge this burden by showing that the nonmoving party has "fail[ed] to

make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at

trial." *Celotex*, 477 U.S. at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711

F.3d 253, 256 (2d Cir. 2013) (finding summary judgment appropriate where the

non-moving party fails to "come forth with evidence sufficient to permit a

reasonable juror to return a verdict in his or her favor on an essential element of a claim" (internal quotation marks omitted)).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial" using affidavits or otherwise, and cannot rely on the "mere allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986). Furthermore, "[m]ere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation and alterations omitted); *see also Vargas* v. *Transeau*, 514 F. Supp. 2d 439, 442 (S.D.N.Y. 2007) (observing that "the mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to defeat summary judgment (internal quotation marks and citations omitted)), *aff'd sub nom. Vargas* v. *Pfizer, Inc.*, 352 F. App'x 458 (2d Cir. 2009) (summary order).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the

movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). However, in considering "what may reasonably inferred" from witness testimony, the court should not accord the non-moving party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *County of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

**B.    Analysis**

### 1.    Summary Judgment Is Granted as to Plaintiff's Due Process Claims

As noted above, the Court construes Plaintiff to have brought his due process claims under Section 1983, which provides a cause of action against "person[s]" acting under the color of state law for deprivation "of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. A Section 1983 claim has "two essential elements: [i] the defendant acted under color of state law; and [ii] as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis* v. *County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). The parties do not address whether Defendant was a state actor for the purposes of Plaintiff's due process claim, but courts in this District have found that public benefit corporations like MTA Bus are state actors in the context of Section 1983 claims. *See Pisani* v. *Westchester Cnty. Health Care Corp.*, 424 F. Supp. 2d 710, 717 (S.D.N.Y. 2006) (noting hospital's status as public benefit corporation rendered it liable under Section 1983 as a state actor); *Majer* v.

9

*Metro. Transit Auth.*, No. 90 Civ. 4608 (LLS), 1990 WL 212928, at *3 (S.D.N.Y. Dec. 14, 1990) (finding that "[t]he MTA is a public benefit corporation under the New York Public Authorities Law … and as such its action is deemed state action"); *see also* N.Y. Pub. Auth. Law § 1261(16) (McKinney 2009) (stating that "'State Agency' shall mean any … public benefit corporation … of the state").[5] The Court thus finds that Plaintiff has met the first prong of a Section 1983 claim.

Plaintiff cannot show, however, that he was deprived of any constitutional or statutory right in satisfaction of the second prong.  Although Plaintiff claims MTA Bus violated his right to due process of law under the Fifth and Fourteenth Amendments, he cannot establish that he was deprived of any property interest.

To determine whether a plaintiff was deprived of property without due process, a district court applies a two-step analysis: first, the court must "identify the property interest involved," if any; next, the court must "determine whether the plaintiff received constitutionally adequate process in the course of the deprivation."  *O'Connor* v. *Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). Identifying the relevant property interest is, in turn, a two-step process.  *Id.*

---

[5]    Neither party addresses the fact that, as a subsidiary of a public authority (the MTA), MTA Bus can only be held liable under Section 1983 for constitutional violations attributable to a municipal policy or custom pursuant to *Monell* v. *Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  *See Rivera* v. *Metro. Transit Auth.*, 750 F. Supp. 2d 456, 463 (S.D.N.Y. 2010) (finding that in order to hold MTA liable for violations by employees, plaintiff must show that through "deliberate conduct, the municipality was the 'moving force' behind the injury alleged" and an official city policy that caused the alleged deprivation, pursuant to *Monell*).  The Court will therefore not consider *Monell* liability separately, and notes that it need not given that no constitutional deprivation has been demonstrated here.

First, the court determines whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff.  *Id.*  This is because "[p]roperty interests … are not created by the Constitution.  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* (quoting *Bd. of Regents of State Colleges* v. *Roth,* 408 U.S. 564, 577 (1972) (quotation marks omitted)).  Second, if the court finds such a property right, it then determines whether that property right "constitutes a property interest for purposes of the Fourteenth Amendment."  *Id.* (quoting *Town of Castle Rock* v. *Gonzales*, 545 U.S. 748, 756 (2005)).

Plaintiff does not make it beyond the first step of the first step: he has failed to demonstrate a cognizable property interest.  While it is true that "[a] public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge," either state law or a preempting collective bargaining agreement must establish that an employee has such a guarantee.  *Ciambriello* v. *County of Nassau*, 292 F.3d 307, 313-14 (2d Cir. 2002).  Plaintiff makes two arguments in favor of a property interest: first, that New York State Civil Service law entitles him to "a full due process hearing before a neutral party" (Pl. Opp. 7-10); and second, that "[t]his is one of those rare cases where a property interest has been created by estoppel" (*id.* at 10-11).

11

The Second Circuit has held that Civil Service Law Section 75 "gives *covered* employees a property interest in their employment, so that they may not be terminated without notice and hearing." *Ciambriello*, 292 F.3d at 314 (emphasis added). But Plaintiff was not a covered employee — indeed, Plaintiff conceded at his deposition that he was not a civil service employee, and he admitted that he had not taken a civil service examination for any position at MTA Bus. (Rozenfeld Dep. 7 ("We're not civil service."), 8-9; Def. 56.1 ¶ 4). As Defendants note (Def. Br. 7), this concession is further borne out by judicial precedent. *See MTA Bus Non-Union Employees Rank & File Comm. ex rel. Simone* v. *Metro. Transp. Auth.*, 899 F. Supp. 2d 256, 267 (S.D.N.Y. 2012) (Rakoff, J.) ("Plaintiffs [MTA Bus employees] are not employees in the civil service of the State of New York because they work for a public authority, which is a separate legal entity."), *aff'd*, 547 F. App'x 12 (2d Cir. 2013) (summary order);[6] *Clark* v. *Metro. Transp. Auth.*, 999 N.Y.S.2d 309, 317 (N.Y. Sup. Ct. 2013) ("Because MTA and its subsidiaries are a public authority and not a state agency, MTA Bus employees are not civil service employees, who comprise only state employees."). And it is undisputed that Plaintiff's union

---

[6]     Plaintiff argues that "Judge Rakoff … was in error" because, Plaintiff claims, he relied on an inapposite case dealing with a public authority that was not MTA Bus.  (Pl. Opp. 8).  Plaintiff then simply declares that "MTA Bus is not an 'authority.'"  (*Id.*).  Plaintiff is mistaken on both fronts: he elides the fact that Judge Rakoff cited the case correctly for the proposition that a public authority is not a civil division of the State, and his bald assertion regarding MTA Bus's organizational structure is contrary to the law.  As discussed above, MTA Bus is a public benefit corporation and subsidiary of the MTA, a public authority.

did not then have a collective bargaining agreement with MTA Bus that might give him some property interest.  (Def. 56.1 ¶ 6; Am. Compl. ¶ 9).[7]

Plaintiff's estoppel argument similarly fails.  Plaintiff asserts that he "was made to believe that he was applying for [a] transfer[ ] to a job with 'tenure,' where after a probationary period he was entitled to an ultimate adjudication by a neutral party on the merits."  (Pl. Opp. 10).  It is true, as Plaintiff alleges (*see id.* at 10-11), that the parties could have "implied" contractual provisions — such as a right to continued employment absent just cause for discharge — through a "course of dealing" or pattern of conduct, *see Ezekwo* v. *N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991).  But Plaintiff offers no evidence to substantiate this argument, and the Court has found none in this record.  Plaintiff's conclusory argument, advanced in his brief and declaration, is not enough to generate an issue of material fact on summary judgment.  *See Hicks*, 593 F.3d at 166 ("Mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." (internal quotation marks and citations omitted)).  Thus, Plaintiff's due process claims must be dismissed on the basis that Plaintiff has not demonstrated that he had any protected property interest.

---

[7]    Undaunted by his concession that he was not a civil service employee, Plaintiff argues that MTA Bus is "in essence, a subsidiary of" the New York City Transit Authority, an entity whose employees are, according to Plaintiff, subject to the Civil Service Law.  (Pl. Opp. 8-10).  Plaintiff's alterations of the text of existing precedent to support this argument are sufficiently egregious and misleading (*see, e.g., id.* at 9) that the Court declines to address them further.

Even if Plaintiff had demonstrated some property interest, he received constitutionally adequate due process.  To be constitutionally sound, pre-deprivation due process "guarantees notice and a hearing prior to the termination of a tenured public employee, [but] the requisite hearing is a minimal one," *Lucarto* v. *Safir*, 264 F.3d 154, 173 (2d Cir. 2001), and it suffices that the employee receive "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story," *Cleveland Bd. of Educ.* v. *Loudermill*, 470 U.S. 532, 546 (1985).

Plaintiff here had both adequate pre- and post-deprivation remedies. Plaintiff presented his side of the story regarding the altercation with his co-worker in a written statement.  Plaintiff was interviewed by Picarelli, who conducted an investigation into the incident, and he was provided with the report resulting from that investigation prior to any disciplinary action. Plaintiff was permitted a Step I hearing, at which he had a union representative and the opportunity to dispute the misconduct charge.  Following that hearing, Plaintiff was suspended.  Post-deprivation, Plaintiff availed himself of the opportunity to appeal to a Step II hearing, where he also had representation and an opportunity to contest the charge and the disciplinary action.  As a result, the penalty of dismissal was reduced to a suspension.  All of this constituted adequate constitutional due process.  *See Ryan* v. *N.Y.C. Dep't of Educ.*, No. 11 Civ. 1628 (JBW), 2011 WL 4899923, at *5 (E.D.N.Y. Oct. 13, 2011) (finding that similar Step I, Step II grievance hearings satisfied pre- and post-deprivation due process); *Hubbard* v. *Hanley*, No. 09 Civ. 10265 (HB),

2010 WL 1914989, at *4 (S.D.N.Y. May 12, 2010) (finding that a Step II grievance proceeding satisfied due process).

Moreover, if Plaintiff remained aggrieved by the disposition of his Step II hearing, he could have challenged it in an Article 78 proceeding pursuant to the New York Civil Practice Law and Rules.[8]  *See Krukenkamp* v. *State Univ. of N.Y. at Stony Brook*, 395 F. App'x 747, 751 (2d Cir. 2010) (summary order) (finding that Article 78 proceeding was an adequate post-deprivation remedy); *Grillo* v. *N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (finding that "an Article 78 proceeding is a perfectly adequate post-deprivation remedy" for the arbitrary deprivation of a property interest (quotation marks omitted)); *Lucarto*, 264 F.3d at 175 ("An Article 78 proceeding [ ] constitutes a wholly adequate post-deprivation hearing for due process purposes.").  Accordingly, Defendant's motion for summary judgment on Plaintiff's due process claims is granted, and those claims are dismissed.

### 2.    Summary Judgment Is Granted as to Plaintiff's Discrimination Claims

#### a.    Plaintiff Has Abandoned Any Disparate Treatment or Hostile Work Environment Claims

The Court now turns to Plaintiff's claims of discrimination based on national origin.  As an initial matter, Plaintiff has abandoned certain discrimination claims he raised (or plausibly may have raised) in his Amended Complaint.  Specifically, he has abandoned any disparate treatment and any

---

[8]    The parties do not dispute that an Article 78 proceeding would have been available to Plaintiff.

hostile work environment discrimination claims, whether under Title VII, the NYSHRL, or the NYCHRL.

As the Second Circuit has remarked, "[A] partial opposition [to a motion for summary judgment] may imply an abandonment of some claims or defenses.  Generally … a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Jackson* v. *Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014).  In such a case, where "abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended."  *Id.*

Plaintiff's Amended Complaint makes broad allegations of discrimination under "the Civil Rights Act of 1964," the NYSHRL, and the NYCHRL.  (Am. Compl. ¶¶ 16-18).  In seeking summary judgment, Defendant offers an educated guess at Plaintiff's specific claims, and argues that Plaintiff cannot maintain any of them because (i) MTA Bus did not retaliate against Plaintiff for engaging in any protected activity; (ii) Plaintiff's suspension was not motivated by discriminatory animus; and (iii) Plaintiff was not subjected to a hostile work environment.  (Def. Br. 10-19).  In his opposition to Defendant's motion, Plaintiff responds only to Defendant's retaliation arguments.  (Pl. Opp. 11-13).  Plaintiff does not respond to Defendant's arguments as to discrimination or hostile work environment claims; he does not put forth any evidence supporting the validity of those claims; and, indeed, he does not even mention those claims.  (*See generally* Pl. Opp.).  Defendant argues from this silence that

16

Plaintiff has abandoned those claims.  (Def. Reply 1-2).  The Court agrees.
Therefore, to the extent that Plaintiff's Amended Complaint alleges
discrimination claims based on disparate treatment or hostile work
environment pursuant to federal, state, or city law, Defendants' motion for
summary judgment on those claims is granted.

### b.   Plaintiff Does Not State a Prima Facie Claim for Retaliation

#### i.   Applicable Law

Broadly speaking, federal, state, and city law makes it unlawful for an
employer to retaliate against an employee because that employee has made a
charge or complaint of unlawful discrimination.  *See* 42 U.S.C. § 2000e-3(a)
(Title VII); N.Y. Exec. Law § 296(7) (NYSHRL); N.Y.C. Admin. Code § 8-107(7)
(NYCHRL).  Plaintiff's claims for retaliation under Title VII and the NYSHRL are
subject to the burden-shifting framework established in *McDonnell Douglas
Corp.* v. *Green*, 411 U.S. 792, 802-04 (1973).  *See Lugo* v. *City of New York*, 518
F. App'x 28, 29 (2d Cir. 2013) (summary order) ("Discrimination claims under
Title VII and the NYSHRL are governed by the burden shifting framework laid
out in *McDonnell Douglas*[.]").  Under the *McDonnell Douglas* analysis, once a
plaintiff makes out a prima facie case of retaliation, the burden shifts to the
defendant to articulate a legitimate, non-discriminatory reason for the adverse
employment action.  411 U.S. at 802-03.  If the defendant meets its burden of
establishing such a reason, the plaintiff must establish that the defendant's
reason is merely a pretext for retaliation.  *Id.* at 804; *see also Holcomb* v. *Iona*

*Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see generally Zann Kwan* v. *Andalex Grp. LLC*, 737 F.3d 834, 842-47 (2d Cir. 2013).

To establish a prima facie case of retaliation under Title VII, "a plaintiff must demonstrate that [i] [he] engaged in protected activity; [ii] the employer was aware of that activity; [iii] the employee suffered a materially adverse action; and [iv] there was a causal connection between the protected activity and that adverse action." *Kelly* v. *Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2013) (internal quotation marks omitted). "The standard[] for evaluating ... [a] retaliation claim[ is] identical under Title VII and the NYSHRL." *Id.*

Retaliation claims under the NYCHRL cover a broader range of conduct. "[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that [he] took an action opposing [his] employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (internal citations omitted).  The Second Circuit has instructed, however, that "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by ... retaliatory motives, or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" *Id.* at 113 (internal citation omitted) (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 40-41 (1st Dep't 2009)).

18

The Second Circuit in *Mihalik* declined to decide "whether, and to what extent, the *McDonnell Douglas* burden-shifting analysis has been modified for NYCHRL claims," 715 F.3d at 110 n.8, but offered the following insights:

> While it is unclear whether *McDonnell Douglas* continues to apply to NYCHRL claims and, if so, to what extent it applies, the question is also less important because the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that [his] employer treated [him] less well, at least in part for a discriminatory reason. The employer may present evidence of its legitimate, nondiscriminatory motives to show the conduct was not caused by discrimination, but it is entitled to summary judgment on this basis only if the record establishes as a matter of law that "discrimination play[ed] no role" in its actions.

*Id.* (quoting *Williams*, 872 N.Y.S.2d at 38, 40 n.27).

### ii.    Analysis

Plaintiff falls at the first hurdle of his retaliation case: he has failed to demonstrate that he engaged in a protected activity.  Even the more liberal standards of the NYCHRL require this fundamental element.  Plaintiff argues that he was unlawfully retaliated against when he was suspended "because he responded to another employee, who called him a 'Russian piece of shit,' by calling the offending employee a 'racist' or perhaps a 'fucking racist.'"  (Pl. Opp. 11).  He reasons that "calling someone [who is] using inappropriate taunts a 'racist' is a protected activity, and that action led to discipline, hence, [he has] a prima facie case."  (*Id.* at 12).

Plaintiff does not allege that he was suspended because he lodged a complaint about a discriminatory employment practice.  He does not even allege that he was suspended *because of* a complaint to his employer; rather,

he alleges that he was suspended because he called a co-worker "racist."[9]  It is true that Plaintiff was disciplined for trading insults with a colleague.  But engaging in a name-calling spat with a fellow employee is not a protected activity, even if Plaintiff's insults were designed to protest the co-worker's personal discriminatory views to that co-worker.  Neither federal, state, nor city discrimination laws are intended to function as a general civility code.  *See, e.g.*, *Mihalik*, 715 F.3d at 113.  And even if Plaintiff were asserting that a complaint to his employer regarding his co-worker's derogatory comments was the basis of his suspension, Plaintiff's claim of retaliation would still not be cognizable under Title VII because "his opposition was not directed at an unlawful *employment practice* of his employer."  *Wimmer* v. *Suffolk Cnty. Police Dep't*, 176 F.3d 125, 135 (2d Cir. 1999) (emphasis in original); *see also Silver* v. *KCA, Inc.*, 586 F.2d 138, 141 (9th Cir. 1978) ("[N]ot every act by an employee in opposition to racial discrimination is protected.  The opposition must be directed at an unlawful employment practice of an employer, not an act of discrimination by a private individual."); *id.* ("The specific evil at which Title VII was directed was not the eradication of all discrimination by private individuals, undesirable though that is, but the eradication of discrimination by employers against employees.").

Thus, "an objection to a derogatory or racist remark by a co-worker does not constitute protected activity for purposes of a retaliatory discharge claim

---

[9]    Whether Plaintiff called Hiltz a "racist," a "fucking racist," or a "lying motherfucker" and "racist cocksucker" is immaterial to the resolution of this motion.

because the remark could not be attributed to the employer, and thus the plaintiff could not be opposing an unlawful employment practice." *Washington* v. *Nat'l R.R. Passenger Corp.*, No. 01 Civ. 4201 (BSJ), 2003 WL 21305354, at *3 (S.D.N.Y. June 5, 2003), *opinion amended on reconsideration on other grounds*, 2003 WL 22126544 (S.D.N.Y. Sept. 12, 2003); *see id.* (dismissing plaintiff's retaliation claim where she alleged that "she was fired because she confronted a fellow employee about what she perceived to be his individual racist actions"). Accordingly, Defendant's motion for summary judgment on Plaintiff's discrimination claims is granted; Plaintiff's claims for retaliation under Title VII, the NYSHRL, and the NYCHRL must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety, and all of Plaintiff's claims are DISMISSED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:      March 16, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge